UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE TATYANA MAZIK | : | Chapter 13 |
| Debtor. | : | Bky. No. 18-10643 ELF |
| | : | |
| CHICAGO TITLE INSURANCE CO., | : | |
| Plaintiff, | : | |
| v. | : | |
| TATYANA MAZIK, | : | Adv. No. 18-151 ELF |
| Defendant. | : | |

# **M E M O R A N D U M**

## I.  INTRODUCTION

In this adversary proceeding, Chicago Title Insurance Co. ("Chicago Title") seeks a determination that the debt owed by Debtor Tatyana Mazik ("the Debtor") is nondischargeable under 11 U.S.C. §523(a)(2)(A) and §523(a)(6).  Pursuant to Fed. R. Civ. P. 12(b)(6), the Debtor filed a motion to dismiss the adversary complaint ("the Motion"). The Motion is based primarily on three (3) grounds:

(1) the untimely filing of Chicago Title's Complaint under nonbankruptcy law;

(2) the untimely filing of the Complaint under federal bankruptcy law; and

(3) failure to state facts alleging a valid claim against the Debtor.

For the reasons explained below, the Motion will be granted, and the Complaint dismissed.  However, Chicago Title will be granted leave to amend to assert a claim under 11 U.S.C. §523(a)(3).

1

## II. PROCEDURAL HISTORY

Prior to commencing this bankruptcy case, the Debtor filed an earlier case, under chapter 7, on March 28, 2017, docketed at Bky. No. 17-12125 ("the Prior Case").

On June 30, 2017, Chicago Title filed an adversary proceeding in the Prior Case, alleging that the debt arising from two (2) promissory notes it holds ("the Notes") was nondischargeable under §523(a)(2) and (a)(6). (Adv. No. 17-188). The Prior Case was dismissed on August 9, 2017 after the Debtor failed to attend several §341 meetings of creditors. As a result, thereafter, the adversary proceeding was also dismissed.

The Debtor filed the present chapter 13 bankruptcy case on January 31, 2018.

On February 23, 2018, the court issued the Notice of Chapter 13 Bankruptcy Case (Official Form 309I) ("the §341 Notice"). The §341 Notice set April 4, 2018 as the date for the meeting of creditors and fixed June 3, 2018 as the deadline to file a complaint challenging the dischargeability of a debt under 11 U.S.C. §523(a)(2), §523(a)(4) and §1328(f). See Fed. R. Bankr. P. 4007(c) (nondischargeability complaints under §523(a)(2) or (a)(4) must be filed "no later than 60 days after the first date set for the meeting of creditors").[1]

On July 2, 2018, Chicago Title filed the instant adversary complaint ("the Complaint") and a motion to enlarge time to file a proof of claim (Bky. No. 18-10643, Doc. # 47).[2]

---

[1] June 3, 2018 was a Sunday. Therefore, the deadline for filing a nondischargeability complaint was Monday, June 4, 2018. See Fed. R. Bankr. P. 9006(a)(1)(c); In re Aloia, 496 B.R. 366, 373 n.3 (Bankr. E.D. Pa. 2013).

[2] Chicago Title alleges that it received no notice of the instant bankruptcy. As a result, on March 14, 2018, after the commencement of the bankruptcy case, it filed a civil action to collect upon the Notes in federal district court. (See No. 18-CV-1116-CDJ (E.D. Pa.)). On May 21, 2018, the Debtor's co-defendants in the district court case filed a suggestion of bankruptcy. Thus, Chicago Title had notice of the Debtor's current bankruptcy on May 21, 2018, two (2) weeks prior to the expiration of the June 4, 2018 deadline for filing a nondischargeability complaint,.

On July 16, 2018, the Debtor filed the Motion. (Adv. No. 18-151, Doc. # 9). Chicago Title responded to the Motion on August 7, 2018. (Adv. No. 18-151, Doc. #13).

### III.  MOTION TO DISMISS STANDARD

The Debtor moves to dismiss the Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6) is applicable in adversary proceedings under Fed. R. Bankr. P. 7012. I have previously discussed the legal standard for a motion to dismiss:

> A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the factual allegations of a complaint, see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and determines whether the plaintiff is entitled to offer evidence to support the claims, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n.8, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A defendant is entitled to dismissal of a complaint only if the plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. Twombly, 550 U.S. at 547, 127 S.Ct. 1955. A claim is facially plausible where the facts set forth in the complaint allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
>
> In evaluating the plausibility of the plaintiff's claim, the court conducts a context-specific evaluation of the complaint, drawing from its judicial experience and common sense. See, e.g., Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009); In re Universal Marketing, Inc., 460 B.R. 828, 834 (Bankr. E.D. Pa. 2011) (citing authorities). In doing so, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Taliaferro v. Darby Township Zoning Board, 458 F.3d 181, 188 (3d Cir. 2006). But, the court is not bound to accept as true a legal conclusion couched as a factual allegation. Twombly, 550 U.S. at 555, 127 S.Ct. 1955; Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.
>
> The Third Circuit Court of Appeals has condensed these principles into a three (3) part test:
>> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

> Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quotations and citations omitted).
>
> In assessing a Rule 12(b)(6) motion, the court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record ... [as well as] 'undisputedly authentic' documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. Unite Nat'l Ret. Fund v. Rosal Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); see also In re Angulo, 2010 WL 1727999, at *12 n. 1 (Bankr. E.D. Pa. Apr. 23, 2010).

In re Boltz-Rubinstein, 574 B.R. 542, 547–48 (Bankr. E.D. Pa. 2017).

## IV. FACTS

In the Complaint, Chicago Title alleges that the Debtor's husband, Yuriy Mazik ("Mr. Mazik"), brokered the purchase of a property at 102 Horseshoe Lane, North Wales, Pennsylvania (the "First Property"). Mr. Mazik initially told the purchasers - the Shapiros - that he was a licensed real estate agent. However, on the closing date, Mr. Mazik revealed that in fact he was not licensed either to broker the sale or to obtain a mortgage on behalf of the Shapiros. Therefore, the sale of the First Property to the Shapiros was not completed as planned. Rather, the First Property was purchased by the Debtor, who took out a mortgage on the property, financed in part by the Shapiro's $40,000 deposit. In an odd arrangement, the Shapiros lived in the First Property and paid the Debtor's mortgage until, in 2008, the Shapiros were able to obtain their own mortgage; at that time, the Shapiros purchased the First Property from the Debtor.

The Debtor's mortgage financing was provided by America's Wholesale Lender ("America's Wholesale"). The Debtor signed a note ("the Horseshoe Lane Note") and mortgage for $391,400.00. Chicago Title insured America's Wholesale in this lending transaction.

Chicago Title alleges that due to the fraud and collusion of Mr. Mazik, the Debtor, and the settlement agent, America's Wholesale's mortgage on the First Property was not recorded.

4

Because the America's Wholesale mortgage was unrecorded, its loan was not paid off at closing when the Shapiros purchased the First Property from the Debtor. Instead, the proceeds were received by the Debtor.

In 2005, the Debtor and Mr. Mazik purchased another property located at 1477 Rockwell Road, Abington, Pennsylvania ("the Second Property"). The Debtor and Mr. Mazik financed this purchase with another mortgage from America's Wholesale, and the Debtor signed the associated $216,000.00 note ("the Rockwell Road Note") (collectively with the Horseshoe Lane Note, "the Notes"). Chicago Title also insured America's Wholesale in the transaction.

Again, Chicago Title alleges that the Debtor, her husband, and their settlement agent colluded to insure that the Rockwell Road mortgage was not recorded.

In 2006, the Debtor and Mr. Mazik sold the Second Property. The unrecorded mortgage was not paid off at closing and the Debtor and Mr. Mazik received the loan proceeds. They continued to make monthly payments on the Rockwell Road Note until 2009.

The mortgages and their associated Notes were sold to Bank of America, which later discovered that the mortgages were unrecorded and had been primed by the properly-recorded mortgages of the subsequent purchasers. Bank of America tendered a title insurance claim to Chicago Title, which accepted coverage in 2015. Chicago Title paid the amount of the Notes to Bank of America, and Bank of America assigned the Notes to Chicago Title.

Both Notes are in default and have been for some time. Both have been rendered unsecured by the failure to record the mortgages. With fees, costs and interest added to the unpaid principal, the Debtor owes more than $1 million on the Notes.

# V. DISCUSSION

The Debtor makes three (3) arguments in support of dismissal of the Complaint:

1. The underlying claim against the Debtor is unenforceable because the statute of limitations under applicable nonbankruptcy law expired prior to the commencement of this bankruptcy case.[3]

2. The Complaint is untimely under the rules of this court, i.e., Fed. R. Bankr. P. 4007(c).

3. The Complaint does not state a claim against the Debtor; at best, it might state a claim against her husband.

### A. Statute of Limitations - State Law

Implicit in a determination that a debt is nondischargeable under 11 U.S.C. §523(a) is the requirement that there be an enforceable debt under applicable nonbankruptcy law. "An action to determine the dischargeability of a debt under § 523(a) has two components . . . . The first step requires that the creditor establish that a debt is in fact owed by the debtor." In re August, 448 B.R. 331, 346–47 (Bankr. E.D. Pa. 2011) (quoting In re Bundick, 303 B.R. 90, 103 (Bankr. E.D. Va. 2003)); accord In re Ivie, 587 B.R. 729, 736 (Bankr. D. Idaho 2018).

The Debtor alleges that the debt arising from the Notes is unenforceable because the applicable statute of limitations has expired.[4]

---

[3] The statute of limitations is not listed in Rule 12(b) as a defense that may be raised in a motion to dismiss. Thus, on their face, the Federal Rules of Civil Procedure require that affirmative defenses, such as the statute of limitations, be pled in the answer. However, in this Circuit, a limitations defense may be made by a Rule 12(b)(6) motion if the limitations bar is apparent on the face of the complaint. In re Pocius, 499 B.R. 472, 473 (Bankr. E.D. Pa. 2013) (citing authorities).

[4] Arguably, there is a distinction between the nature of the defense to the underlying claim in August and the defense raised here. In August, the debtor asserted that the underlying debt (a gambling debt incurred at a New Jersey casino) was unenforceable as a matter of public policy and statute in Pennsylvania. In other words, the debtor's argument in August was that the claim itself was not **[cont.]**

Pennsylvania imposes a four (4) year statute of limitations on contract claims. 42 Pa.C.S.A. §5525(a). The limitation period begins to run on the date of the breach. E.g., Romeo & Sons, Inc. v. P.C. Yezbak & Son, Inc., 652 A.2d 830, 832 (Pa. 1995); Himrod v. Kimberly, 219 Pa. 546, 552 (1908). For installment contracts, a new cause of action on each installment accrues when that installment is missed. Resolution Tr. Corp. v. Koock, 867 F. Supp. 284, 288 (E.D. Pa. 1994). When an acceleration clause has been properly exercised by the lender, the statute of limitations on the lender's right to collect the accelerated balance due (as opposed to the separate claims that arise each time there is a missed installment) begins to run from the date that the borrower fails to pay the accelerated balance as required by the note. See Prop. Acceptance Corp. v. Zitin, 2007 WL 2343869, at *1 (E.D. Pa. Aug. 15, 2007).

In this proceeding, the Notes are installment contracts with acceleration clauses. The Complaint pleads that the Horseshoe Lane Note was accelerated by Chicago Title in mid-2015. (Compl. ¶38). The Complaint also allows me to infer that the Rockwell Road Note has not yet been accelerated, but there have been installment defaults that would allow Chicago Title to accelerate. (Compl. ¶¶ 53, 61).

---

[cont.]
cognizable under applicable nonbankruptcy law -- in effect, that the claim simply did not exist. The statute of limitations defense raised by the Debtor in this adversary proceeding arguably differs in that it does not go to the inherent legitimacy of the debt memorialized by the Notes. The statute of limitations is an affirmative defense that is waivable and the expiration of the limitations deadline does not extinguish the creditor's claim. See In re Keeler, 440 B.R. 354, 364–65 (Bankr. E.D. Pa. 2009).

That said, considering that the Debtor is aware of the affirmative defense and can be expected to raise it, the distinction I have drawn appears immaterial. What would be the point of determining the debt to be nondischargeable only to have the Debtor successfully defend against an enforcement action in state court?

Based on the allegations in the Complaint, neither Note was accelerated more than four (4) years before the commencement of the bankruptcy case. Therefore, I cannot conclude that the statute of limitations has run on Chicago Title's claim against the Debtor.[5]

### B. The Deadline in the Federal Rules of Bankruptcy Procedure

**1.**

The Debtor moves to dismiss the Complaint because it was not timely filed under the rules of court.

Complaints alleging nondischargeability under 11 U.S.C. §§ 523(a)(2), (4) or (6) are governed by §523(c)(1), which provides for exclusive bankruptcy court jurisdiction of such nondischargeability determinations. E.g., Judd v. Wolfe, 78 F.3d 110, 114 (3d Cir. 1996); In re McCabe, 543 B.R. 182, 188 (Bankr. E.D. Pa. 2015).[6]

Further, §523(c) complaints – i.e., complaints under §§ 523(a)(2), (4) or (6) – are subject to the filing deadlines in Fed. R. Bankr. P. 4007(c). Rule 4007(c) provides that a creditor must file a §523(c) complaint "no later than sixty (60) days after the first date set for the meeting of creditors under §341(a)." Id.

---

[5] Based on this analysis, it is unnecessary to consider additional factors that may toll the statute of limitations, such as the automatic stay imposed in the Prior Case. See 42 Pa.C.S.A. §5535; see also 11 U.S.C. §108.

[6] There are some exceptions to the bankruptcy court's exclusive jurisdiction that are not applicable here. See 11 U.S.C. §523(c)(2).

In this case, the deadline imposed by Rule 4007(c) expired on June 4, 2018, twenty-eight (28) days before Chicago Title filed its Complaint. Thus, as the Debtor contends, the Complaint is facially untimely.

In response, Chicago Title argues that even if the Complaint was not filed according to the initial deadline, some mechanism – tolling, equity, permissive extension – applies in this case, so the Complaint should be deemed timely.[7]

**2.**

Chicago Title initially invokes Fed. R. Bankr. P. 9006(b) – in effect, asking me to consider its response to the Motion as a request for enlargement of time under Rule 4007(c).

Rule 9006(b) generally permits the enlargement of time for various actions in bankruptcy cases upon a showing of either "cause" or "excusable neglect" (depending on whether the enlargement request is made before or after the deadline). However, Rule 9006 also identifies certain matters in which the deadline can be extended <u>only</u> according to the terms specified in other Federal Rules of Bankruptcy Procedure. <u>Compare</u> Fed. R. Bankr. P. 9006(b)(1) <u>with</u> Fed. R. Bankr. P. 9006(b)(3).

---

[7] As stated earlier, on the same day that Chicago Title filed this adversary complaint, it filed a motion to enlarge the time for filing a proof of claim. The hearing on that motion was held and concluded on September 25, 2018 and the matter is presently under advisement.

At the September 25, 2018 hearing, Chicago Title offered evidence that, on March 14, 2018, it filed a civil action in federal district court to collect upon the Notes. (See No. 18-CV-1116-CDJ (E.D. Pa.)). Chicago Title maintains that, thereafter, the Debtor failed to give it notice of her bankruptcy filing. On May 21, 2018, the Debtor's codefendants in the District Court case filed a suggestion of bankruptcy that referenced the Debtor's bankruptcy. Chicago Title asserts that this was the first notice it received of the bankruptcy case.

Technically, this evidence is not part of the record in this adversary proceeding. However, I will consider it in evaluating whether Chicago Title should be granted leave to amend.

Rule 9006(b)(3) expressly provides that the time for taking action under Rule 4007(c) – i.e., the deadline for filing a complaint to determine dischargeability – may be enlarged only to the extent and under the conditions stated in Rule 4007(c). Rule 9006(b)(3) "precludes the bankruptcy court from granting late-filed motions to extend the [filing] period" beyond the conditions permitted by Rule 4007(c). In re Weinberg, 197 F. App'x 182, 186 (3d Cir. 2006) (nonprecedential) (citing In re Cruz, 323 B.R. 827, 831 (B.A.P. 1st Cir. 2005) (internal quotations omitted)); accord In re Heyden, 570 B.R. 489, 492–93 (Bankr. W.D. Pa. 2017).

Rule 4007(c) permits extension of the deadline by motion "filed before the time has expired." Id. The plain language of Rule 4007(c) "unambiguously requires...a motion for an extension of time… be filed on or before expiration of the date established for the filing of" a nondischargeability complaint under §523(c). Weinberg, 197 F. App'x at 185-86.

Chicago Title's request for an extension of the Rule 4007(c) deadline in its response to the Motion was made after the expiration of the deadline. Thus, through its deference to Rule 4007(c), Rule 9006 provides no remedy to Chicago Title.

### 3.

Next, Chicago Title asserts that the Rule 4007(c) deadline should be equitably tolled because the Debtor failed to provide Chicago Title with notice of the bankruptcy case and the deadline for filing a nondischargeability complaint until a scant few days before the deadline.

The equitable tolling doctrine generally "stops the running of a limitations period;" but whether the deadline fixed by Rule 4007(c) is subject to this doctrine is "less clear." In re Fellheimer, 443 B.R. 355, 370-72 (Bankr. E.D. Pa. 2010); see generally In re Canonico, 2017 WL 3318840, at *3–4 (Bankr. D.N.J. June 16, 2017).

Courts are divided on this issue, and there is no binding case law in this circuit. Compare In re Benedict, 90 F.3d 50 (2d Cir. 1996) (applying equitable tolling) with In re Alton, 837 F.2d 457, 459 (11th Cir. 1988) (no equitable tolling of Rule 4007(c) deadlines); Neeley v. Murchison, 815 F.2d 345, 346-47 (5th Cir. 1987) (same); see also Equitable Tolling of Federal Rules of Bankruptcy Procedure, Rule 4007(c), Providing 60-Day Deadline for Filing Dischargeability Complaints, 40 A.L.R. Fed. 2d 541 (2009).[8]

I need not reach the issue here. Even if equitable tolling may be applied under Rule 4007(c), I decline to apply the doctrine because Chicago Title has an adequate remedy at law. See Justice v. United States, 6 F.3d 1474, 1480 (11th Cir. 1993) (under "traditional principles of equity jurisprudence" equitable tolling is inappropriate if there is an adequate remedy at law); Taylor v. Carroll, 2004 WL 1151552, at *6 (D. Del. May 14, 2004) (same).

As explained in the next two (2) sections of this Memorandum, even after dismissal of the Complaint, Chicago Title has an alternative and adequate remedy: invoking 11 U.S.C. §523(a)(3) to assert its claims under §523(a)(2)(A) and §523(a)(6).

---

[8] The Third Circuit offers only general guidance about when equitable tolling should be applied, if the underlying deadline is susceptible to tolling. Equitable tolling is an "extraordinary remedy," and should only be granted "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005) (citing Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997)).

**C. Section 523(a)(3)(B) Does Not Provide A Basis for Extending the Rule 4007(c) Deadline**

Finally, Chicago Title invokes 11 U.S.C. §523(a)(3)(B), an exception to the chapter 7 discharge,[9] which provides:

> **(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
>
> . . .
>
> **(3)** neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> . . .
>
> **(B)** if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request . . . .

Chicago Title argues that section 523(a)(3)(B) "excuses a creditor who does not receive notice of the pendency of a bankruptcy case in time to file a timely non-dischargeability action from the 60-day deadline imposed by Rule 4007(c) for claims referenced under 523 (a)(2), (4), or (6)." (Response ¶6, 7).

There is some authority that is consistent with Chicago Title's position that §523(a)(3)(B) provides a mechanism for relief from the Rule 4007(c) deadline.[10] However, the majority, and

---

[9]    On its face, §523(a)(3)(B) has no applicability in a chapter 13 case, such as this one, in which the debtor seeks a discharge under 11 U.S.C. §1328(a).  However, §1328(a)(3) incorporates §523(a)(3)(B) as an exception to a chapter 13 discharge.

[10]    See In re Ozarowski, 2006 WL 3694547, at *6 (Bankr. D.N.J. Dec. 12, 2006); In re Eliscu, 85 B.R. 480, 481 (Bankr. N.D. Ill. 1988) (dictum); In re Galvin, 50 B.R. 583, 586 (Bankr. D.R.I. 1985); see also In re Feagins, 439 B.R. 165, 177 (Bankr. D. Haw. 2010) (stating, perhaps in unintentionally overbroad terms, "section 523(a)(3)(B) indefinitely extends the time to file a complaint under sections 523(a)(2), (4), or (6)").

correct, view is that Rule 4007(c) and §523(a)(3)(B) operate independently; the Code section does not serve as grounds for extending the deadline in the court rule.

Section 523(a)(3)(B) is a cause of action, not an excuse from deadlines. As one court observed, if a creditor does not receive notice, the "remedy lies in section 523(a)(3)(B) rather than an untimely motion to extend" under Rule 4007(c). In re Joyner, 2009 WL 1490844, at *1 (Bankr. M.D.N.C. May 27, 2009); accord In re Stapp, 2017 WL 3601225 (Bankr. S.D. Ind. Aug. 21, 2017); In re Sieger, 360 B.R. 653, 656 (Bankr. N.D. Ohio 2007); Am. Standard Ins. Co. of Wisconsin v. Bakehorn, 147 B.R. 480, 484 (N.D. Ind. 1992).

In other words, the court lacks authority under the rules of court to extend the Rule 4007(c) deadline, but the statute, §523(a)(3), gives the creditor deprived of notice of the deadline the opportunity to assert nondischargeability claims arising under §523(a)(2), (4) and (6) as subcomponents of a §523(a)(3) claim.[11] And, because §523(a)(3) is not among the Code provisions referenced in §523(c), there is no deadline in the Federal Rules of Bankruptcy Procedure for filing a §523(a)(3) complaint. E.g., In re Menk, 241 B.R. 896, 915 (B.A.P. 9th Cir. 1999).[12]

---

[11] There is some division regarding the further application of this principle.

In order to obtain a nondischargeability determination under §523(a)(3), some courts require only that a creditor not provided with notice of the §523(c) filing deadline establish only that it holds a "colorable" claim under §523(a)(2), (4) or (6); other courts require that the creditor prove the merits of the §523(a)(2), (4) or (6) claim. Compare In re Haga, 131 B.R. 320, 323–25 (Bankr. W.D. Tex. 1991) (discussing various lines of cases and adopting the "colorable" claim approach) with In re Stambaugh, 533 B.R. 449, 457-58 (Bankr. M.D. Pa. 2015) (discussing Haga and reaching the opposite conclusion); In re Jones, 296 B.R. 447, 449–50 (Bankr. M.D. Tenn. 2003) (same).

[12] Also, unlike proceedings under §523(a)(2), (4) and (6), the bankruptcy court has only concurrent (not exclusive) jurisdiction over claims under §523(a)(3). E.g., In re Real, 2018 WL 2059603, at *5 (Bankr. M.D. Fla. Apr. 30, 2018); In re Money Center of America, Inc., 2017 WL 3971826, at *2 (Bankr. D. Dela. Sept. 8, 2017); In re Manning, 2012 WL 2328236, at *2-3 (Bankr. D. Colo. June 19, 2012).

Consequently, §523(a)(3)(B) does not provide grounds to permit the late filing of Chicago Title's Complaint.

### D. The Complaint Will Be Dismissed With Leave to Amend

Based on the discussion above, I conclude that the Complaint must be dismissed because it was not timely filed. The next question is whether Chicago Title should be granted leave to file an amended complaint.

It is well settled that a court should grant a plaintiff leave to amend "unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Here, while Chicago Title may not proceed under 11 U.S.C. §523(a)(2)(A) or §523(a)(6), it may be able to obtain the relief it seeks under §523(a)(3)(B).[13] As explained below, providing Chicago Title the opportunity to amend the Complaint appears neither inequitable nor futile.

A §523(a)(3)(B) claim has two (2) major elements:

(1) the underlying debt "is of a kind" specified in §523(a)(2), (4) or (6)[14] and

---

[13]    I recognize that Chicago Title did not plead a §523(a)(3)(B) claim in the Complaint. However, in evaluating whether leave to amend should be granted, I am guided in part by the fundamental policy under Fed. R. Bankr. P. 12(b)(6) – that the court is to determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Here, by the simple expedient of invoking a different subsection of the operative Code provision and, as explained in the text, infra, supplementing the factual allegations of the Complaint, Chicago Title may well be able to state a cognizable claim for relief. In exercising my discretion, I consider it appropriate to give the Plaintiff that opportunity.

[14]    Chicago Title does not raise a claim under §523(a)(4). I will not further discuss that provision.

> (2) the debtor's failure properly to list and schedule a creditor must have deprived the creditor of notice of the deadlines to timely file a proof of claim and a nondischargeability complaint.

The Complaint describes in detail a scheme designed to deprive Chicago Title's predecessor-in-interest of its bargained for secured position against the real property owned and then sold by the Debtor and her spouse, and the financial detriment Chicago Title suffered as a result of the alleged fraudulent or willful and malicious conduct. An extended discussion is not required to explain my conclusion that the facts alleged state a claim for relief under either 11 U.S.C. §523(a)(2)(A) or §523(a)(6).[15]

On the other hand, the Complaint lacks any allegations to support the lack of notice element of a §523(a)(3)(B) claim. However, in light of the representations made in Chicago Title's response to the Motion, as well as the evidence presented at the hearing on its motion to extend the deadline for filing a proof of claim, it is certainly possible that Chicago Title can supplement the allegations in the Complaint with the additional allegations necessary to state a claim under 11 U.S.C. §523(a)(3),[16] thereby resuscitating its §523(a)(2)(A) and §523(a)(6)

---

[15]   I have not overlooked the Debtor's additional argument that the facts in the Complaint at best state a claim against her husband, not the Debtor. I disagree with this characterization of the Complaint, which adequately describes the Debtor as an active participant in the alleged fraudulent scheme. (See Complaint ¶¶ 17, 21, 29, 44, 46).

[16]   I have already noted that the hearing on Chicago Title's motion to enlarge the time to file a proof of claim has been concluded and that the matter is under advisement. See n.7, supra. Query whether Chicago Title's pursuit of an enlargement of time to file a proof of claim affects its potential claim under §523(a)(3)(B)?

nondischargeability claims.[17]

## VI. CONCLUSION

For the reasons stated above, the Debtor's Motion will be granted. Chicago Title's nondischargeability claims under §523(a)(2) and (6) claims are not adequately pled; they are untimely and must be dismissed. However, I will grant Chicago Title leave to amend if it wishes to pursue an alternate nondischargeability theory under §523(a)(3).

**Date: October 30, 2018**

　　　　　　　　　　　　　　　　　　**ERIC L. FRANK**
　　　　　　　　　　　　　　　　　　**U.S. BANKRUPTCY JUDGE**

---

[17] I note that, absent the applicability of §523(a)(3), Chicago Title could not state a claim under §523(a)(6). The applicable provision governing exceptions to discharge, 11 U.S.C. §1328(a), does not incorporate §523(a)(6) by reference, see 11 U.S.C. §1328(a)(2); and the closest analogue, §1328(a)(4), limits the discharge exception for willful or malicious conduct to "injury by the debtor that caused personal injury to an individual or the death of an individual." However, §1328(a)(2) does incorporate §523(a)(3) by reference and that section expands the scope of the discharge exception to include §523(a)(6).